# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| **TRAXCELL TECHNOLOGIES, LLC** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 6:21-cv-00023-ADA** |
| | § | |
| **GOOGLE LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## DEFENDANT'S MOTION TO TRANSFER VENUE TO THE
## NORTHERN DISTRICT OF CALIFORNIA PURSUANT TO § 1404(a)

Defendant Google LLC hereby moves, pursuant to 28 U.S.C. § 1404(a), to transfer this patent infringement action to the Northern District of California ("NDCA").

## I.      INTRODUCTION

On January 13, 2021, Traxcell Technologies, LLC ("Traxcell") filed the instant action against Google alleging that features of Google Maps, as operating on Pixel phones, infringe U.S. Patent Nos. 9,549,388 ("the '388 patent") and 9,918,196 ("the '196 patent") (collectively, "Patents-In-Suit").  It is well established that Google is headquartered in Mountain View, California, which is located in the Northern District of California ("NDCA").  Google personnel working on Google Maps are centered in and around its headquarters.

For at least these reasons, the center of gravity of this case points to NDCA, not this District.  Any analysis of the location of Traxcell and other relevant witnesses does not change this conclusion.  Traxcell has no meaningful connection to the Western District of Texas ("WDTX").  At most, Traxcell alleges a principal place of business in a different district, and its director, who

is also one of the named inventors, has his primary residence outside the state and closer to California. As such, Traxcell's choice of venue, which is merely a product of forum shopping, is entitled to little deference.

Additional facts confirm that NDCA is the more convenient forum for this dispute. For example, the documents and sources of proof relevant to Google Maps are all either physically present in Northern California or are most easily accessible in the United States from Mountain View or San Francisco, California. And, key third-party witnesses, including one of the two of named inventors of the Patents-In-Suit, as well as inventors of relevant prior art, are in California. On balance, the weight of evidence critical to adjudicate this action militates in favor of Northern California, making a transfer there appropriate.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (citing *Cont'l Grain Co. v. The Barge FBL-585, et al.*, 364 U.S. 19, 26, 27 (1960)). In determining whether to transfer an action, a court first determines whether the claims "might have been brought" in the proposed transferee venue. *In re Volkswagen AG,* 371 F.3d 201, 202 (5th Cir. 2004) ("*Volkswagen I*"). If the transferee venue is proper, the court then weighs a number of public and private interest factors to determine whether the transferee venue is "clearly more convenient." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). However, the determination is not whether the "transferee forum is *far* more convenient." *In re Toyota Motor Corp.,* 747 F.3d 1338, 1341 (Fed.

2

Cir. 2014) (emphasis in original).  Nor does plaintiff's choice of venue carry any weight.  *In re Nintendo Co.,* 589 F.3d 1194, 1200 (Fed. Cir. 2009).

The private factors that courts consider in a motion to transfer are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Parus Holdings Inc. v. LG Elecs. Inc.*, No. 6:19-CV-00432-ADA, 2020 WL 4905809, at \*2 (W.D. Tex. Aug. 20, 2020) (quoting *Volkswagen I,* 371 F.3d at 203).  A plaintiff's choice of venue is not a factor in the transfer analysis.  *Volkswagen II,* 545 F.3d at 315.  Rather, this choice is taken into account through the "clearly more convenient" standard applied by the Court in weighing the transfer request.  *Id.*  The public factors considered are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."  *Volkswagen I*, 371 F.3d at 203.

## III.   ARGUMENT

### A.    The Parties Have No Meaningful Ties In This District Relevant To This Case

#### 1.    Relevant Information Pertaining To Google Maps Is In Or Logistically More Convenient To Northern California

Google's principal place of business is in Mountain View, California, which is located in NDCA.  (Chen Decl.[1], ¶ 2.)  Google has been headquartered in Northern California since its founding in 1998 and has been headquartered at its current location in Mountain View since 2003.  (*Id.*)  Over one third of Google's worldwide employees, including engineers, managers,

---

[1] "Chen Decl." refers to the Declaration of Andrew Y. Chen in Support of Motion To Transfer Venue To The Northern District Of California Under 28 U.S.C. § 1404(a), filed concurrently herewith.

executives, and staff, are located in Mountain View, which is the strategic center of Google's

business and the main site for, among other things, Google Maps.  (*Id.*, ¶ 3.)

Google also houses thousands of employees in its Mountain View office and its other

offices in Northern California, including in Sunnyvale, San Francisco, and San Bruno.  (*Id.*, ¶ 3.)

The most significant sales, marketing, design, and release decisions related to the accused

Google Maps application are made in Northern California by product leads, managers, and

engineering teams.  (*Id.*, ¶ 4.)  Additionally, key Google employees with knowledge and/or

managerial responsibility regarding the design, development, and operation of Google Maps are

located in Google's Mountain View, California office.  (*Id.*, ¶ 6.)  Moreover, core decisions and

strategy development related to the marketing of and product releases for those products are

handled by managers and product leads in Northern California.  (*Id.*, ¶¶ 4, 5.)  Thus, any

documents relevant to the Google Maps application that are generated, for instance, by such

managers, project leads or engineers, including highly confidential proprietary source code, are

either physically present in or electronically accessible from Northern California.  (*Id.*, ¶ 7.)

And, the persons most qualified to identify and locate such documents are in those jurisdictions.

(*Id.*)

## 2.     Traxcell And The Named Inventors Of The Patents-In-Suit Have No Connection To This District

Traxcell alleges a principal place of business outside this District, in Marshall, Texas.

(D.I. 1.)  The named inventors of the Patents-In-Suit also appear to reside outside this District.

One of the named inventors of the Patents-In-Suit, Stephen Michael Palik, is a third party

4

witness and located in California (Ex.[2] 1), while his co-inventor inventor, Mark Jefferson Reed, who is also a member of Traxcell, also appears to maintain his primary residence in Tucson, Arizona (Ex. 2).  To the extent that Mr. Reed has established recent contacts within this District, such activities are not entitled to any weight to the extent such activities took place after the filing of the complaint.  *See In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) ("Motions to transfer venue are to be decided based 'on the situation which existed when the suit was instituted.'" (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960))).  Apart from Traxcell's litigation activities, it does not appear that it maintains any office or has any employees who conduct business in Texas.

### B.      Third-Party Witnesses Are Located In California

In addition to key Google witnesses, there are several third-party witnesses located in California.  For example, in addition to Mr. Palik, who is a third-party named inventor of the Patents-In-Suit, other inventors or assignees on prior art patents that may become central to the invalidity issues in this case appear to reside in or around Northern California. (*See, e.g.*, Ex. 3, U.S. Pat. 6,882,313 to Fan ("Dual Platform Location-Relevant Service"); Ex. 4, U.S. Pat. 6,515,595 to Obradovich ("Personal Communication and Positioning System").

### C.      Traxcell Could Have Brought This Action In NDCA

Plaintiffs could have brought this action in NDCA because venue is appropriate where the defendant is headquartered.  28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Group Brands*, LLC, 137 S. Ct. 1514 (2017).  Google's headquarters is in Mountain View, California,

---

[2] Unless otherwise stated, "Ex." refers to the Exhibits attached to the Declaration of Kathleen M. McCarte in Support of Motion To Transfer Venue To The Northern District Of California Under 28 U.S.C. § 1404(a), filed concurrently herewith.

which is in the Northern District of California.  *See* Chen Decl., ¶ 2.  NDCA is also where Google

developed and maintains the technology related to Google Maps.  *See id*. at ¶ 5.

Furthermore, Traxcell's alleged basis for venue in this District applies equally to every

other judicial district in the United States, including NDCA.  *See* D.I. 1 at ¶ 7 (alleging venue is

proper given that Google is "shipping, manufacturing, distributing, offering for sale, selling, and

advertising (including the provision of interactive web pages) its products and services in the State

of Texas and the Western District of Texas").  Thus, to the extent that venue is proper in this

District on Traxcell's alleged basis, so too is it proper in NDCA.

> **D.     Transfer To NDCA Best Serves The Interests Of Justice And Is Clearly More Convenient**

Once the transferee venue is deemed proper, the court then weighs each private and

public interest factor to determine whether transfer is appropriate.  These factors clearly weigh in

favor of transfer to NDCA.

> **1.     The Private Interest Factors Favor Transfer To NDCA**

> > **a.     Google's Affiliated Witnesses And Sources Of Proof Are In NDCA**

"[I]n patent infringement cases, the bulk of the relevant evidence usually comes from the

accused infringer. Consequently, the place where the defendant's documents are kept weighs in

favor of transfer to that location."  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199 (Fed. Cir. 2009)

(citing *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *see also True Chem. Solutions,

LLC v. Performance Chem. Co.*, No. 7-18-CV-00078-ADA, 2021 WL 860009, at *3 (W.D. Tex.

Mar. 8, 2021) ("Given that True Chem is the accused infringer, it will likely have the bulk of the

relevant documents in this case."); *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1379 (Fed. Cir.

2021) (holding that the district court erred in failing to consider the location of defendant's

potential party witnesses).   In particular, the location of an alleged infringer's research and development-related documents and evidence is an important factor to consider.  *See Nintendo,* 589 F.3d at 1199-1200.  While technological advances have lessened the impact of this factor, it is still entitled to weight.  *See Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 872 (E.D. Tex. 2013) (citing *Genentech*, 566 F.3d at 1345–46) (weighing presence of design documents for the accused products in NDCA in favor of transfer to NDCA).  The convenience of the party witnesses must be considered "even if the employer allows for their testimony."  *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) ("the district court erred in entirely discounting Hulu's party witnesses located in the transferee venue because, according to the district court, Hulu "could compel their testimony at trial.").

Here, Google is headquartered in Mountain View, California.  (Chen Decl., ¶ 2.).  Google Maps was initially developed at the Mountain View headquarters, and much of the ongoing design and development takes place in Northern California.  (*Id*. at ¶ 5.).  In particular, key witnesses located in Northern California have relevant knowledge regarding the accused features of Google Maps.  This includes Stan Chesnutt, a Senior Software Engineer, located in Google's Mountain View, California office.  (*Id*. at ¶ 6.)  Mr. Chesnutt is responsible for, among other things, working with the technology called the "network location provider," which determines the location of an Android phone when needed by an application or any system within the phone.  (*Id*.)  Mr. Chesnutt was already deposed in an earlier case brought by Traxcell against Verizon where it asserted the '388 patent against, *inter alia*, Google Maps functionality.  Other relevant Google witnesses are located in Northern California, including for instance: Smruti Parichha, a Software Engineer responsible for working with the Android Google Maps application, including determining a device's location; Lili Cao, a Software Engineer responsible for working with the iOS Google

7

Maps application, including determining a device's location; and Andrew Chen, a Group Product Manager for Google Maps,  all of whom are located in Google's Mountain View, California office. (*Id*. at ¶ 6.)

Based on the witnesses and evidence Google identifies in NDCA, this factor weighs substantially in favor of transfer to NDCA.  *See, e.g., In re TS Tech USA Corp.,* 551 F.3d 1315, 1320 (Fed. Cir. 2008) (finding that 900 miles of additional travel to Texas tipped the convenience to witnesses factor "considerably" in favor of transfer); *Genentech,* 566 F.3d at 1345 (finding the "convenience of the witnesses and parties" factor weighed "substantially in favor of transfer" where numerous material witnesses resided within NDCA and the state of California but none resided in EDTX).

### b.  Traxcell Has No Meaningful Ties To This District That Weighs Against Transfer To NDCA

For its part, Traxcell does not identify any place of business, employee, or inventor in WDTX as of the filing of the complaint.  *See* D.I. 1 at ¶¶ 1-7; *In re EMC Corp.*, 501 Fed. Appx. at 976.  According to the Complaint, Traxcell maintains its principal place of business outside this District, in Marshall, Texas.  Just two inventors are named on the Patents-In-Suit, Mark Jefferson Reed and Stephen Michael Palik.  Mr. Reed is Traxcell's director, manager, and member, and according to public records, makes his residence outside Texas, in Tucson, Arizona.  D.I. 1-1; Ex. 2.  Mr. Palik is a third-party witness who is currently located in the transferee forum state (*i.e.*, Redondo Beach, California), and who would be subject to the NDCA court's subpoena power.  D.I. 1-1; Ex. 1; Fed. R. Civ. P. 45(c)(1)(B).

8

**c.** **The Convenience And Cost Of Attendance For Party Witnesses Favors Transfer**

The "single most important factor in transfer analysis" is the convenience to and cost for the witnesses to travel to and attend trial. *Genentech,* 566 F.3d at 1343. Under Fifth Circuit law, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I,* 371 F.3d at 204–05. "[I]t is an 'obvious conclusion' that it would be more convenient for witnesses to testify at home and that '[a]dditional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'" *Volkswagen II*, 545 F.3d at 317 (quoting *Volkswagen I,* 371 F.3d at 205); *See also TS Tech,* 551 F.3d at 1320.

As to party witnesses, as noted above, based on allegations set forth in Traxcell's Complaint, nearly all the key party witnesses in this case are located in and around NDCA. *See* Section III.A above. Therefore, transferring the case to that District would be clearly more convenient.

**d.** **The Convenience To And Availability Of Compulsory Process For Non-Party Witnesses Favors Transfer**

As to non-party witnesses who are important to the resolution of the case, the particular convenience to them also favors a transfer to NDCA. *Genentech*, 566 F.3d at 1343 (placing special emphasis on the convenience of third-party witnesses); *Freehold Licensing, Inc. v. Aequitatem Cap. Partners, LLC*, No. A-18-CV-413 LY, 2018 WL 5539929, at *7 (W.D. Tex. Oct. 29, 2018), report and recommendation adopted, No. 1:18-CV-413-LY, 2018 WL 11170601 (W.D. Tex. Nov. 19, 2018) ("[I]t is the convenience of non-party witnesses which is accorded the most weight.").

US 169486198v14

There are likely to be a number of non-party witnesses who reside in California with critical information regarding issues presented in this case, including related to the Patents-In-Suit and prior art to them.  This favors transfer.  *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) (finding the district court's failure to consider the locations of prior art witnesses to be an abuse of discretion); *Genentech*, 566 F.3d at 1344 ("It is clear from the parties' filings below that inequitable conduct, infringement, and invalidity might be issues at trial. The petitioners have identified witnesses relevant to those issues, and the identification of those witnesses weighs in favor of transfer. It was not necessary for the district court to evaluate the significance of the identified witnesses' testimony."); *Polaris Innovations Ltd. v. Dell, Inc.*, No. SA-16-CV-451-XR, 2016 WL 7077069, at *8 (W.D. Tex. Dec. 5, 2016) (finding that potential testimony from California-based prior art witnesses weighted factor in favor of transfer).  At least the following third parties appear to have information relevant to issues in this case, but may be unavailable in this District, are outside of this Court's subpoena power, and/or appear to be located in or near the Northern District of California:

- *Stephen Michael Palik*.  Mr. Palik is a co-inventor of the Patents-In-Suit.  Unlike Mr. Reed who is an officer of Traxcell (and the only other co-inventor of the Patents-In-Suit), Mr. Palik does not appear to have a current corporate relationship to Traxcell, meaning he would not be a party witness.  He also appears to be a resident of California, and would be subject to the subpoena power of NDCA courts.  *See* Ex. 1.

- *Rodric C. Fan*.  Mr. Fan is a named inventor of several location data patents, including U.S. Patent Number 6,882,313 directed to a platform for providing location-related services to the user of a mobile unit.  According to public information, Mr. Fan resides in San Francisco Bay Area, in Northern California, and is subject to the subpoena power there. *See* Exs. 3, 5.

- *Michael L. Obradovich*.  Mr. Obradovich is a named inventor of U.S. Patent Number 6,515,595 directed to a system that provides maps and location tagged data to a personal communication device.  Mr. Obradovich is listed on this patent as residing in San Clemente, CA.  The other named inventors are also listed as residing in California.  *See* Ex. 4.

10

Defendants do not have a relationship with these third parties such that these witnesses would be expected to voluntarily agree to testify in this case.  Given the inconvenience and expected unwillingness of traveling from California to Texas for a litigation in which nearly all such third-parties have no interest, procuring their attendance at trial will likely require compulsion.  *Uniloc 2017 LLC v. Blackboard Inc.*, No. A-17-CV-0753-LY, 2020 WL 4578702, at *3 (W.D. Tex. May 15, 2020) ("[A]s no identified witness exists within subpoena power of the Western District of Texas, and there are identified witnesses in subpoena power of the District of Delaware, this factor weighs in favor of transfer."); *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014) (availability of compulsory process over potential non-party witnesses favored transfer to California).  Unlike this District, however, NDCA will have subpoena power over these witnesses, which favors transfer.  *Genentech Inc.*, 566 F.3d at 1345 ("The fact that [a] transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly."); *In re Hulu, LLC*, 2021 WL 3278194, at *4 ("where, as here, the movant has identified multiple third-party witnesses and shown that they are overwhelmingly located within the subpoena power of only the transferee venue, this factor favors transfer even without a showing of unwillingness for each witness."); *see also* Fed. R. Civ. P. 45(c)(1).

## 2.     The Public Interest Factors Also Favor Transfer To NDCA

### a.     Court Congestion Weighs in Favor of Transfer

The first public interest factor articulated in *Volkswagen I* is the "administrative difficulties flowing from court congestion."  371 F.3d at 204.  The Federal Circuit has noted that "a court's general ability to set a fast-paced schedule is not particularly relevant to this factor."  *In re Apple Inc.*, 979 F.3d 1332, 1344 (Fed. Cir. 2020).  This is especially true where the court is slow to

11

resolve cases.  *Id*. ("Indeed, a district court cannot merely set an aggressive trial date and subsequently conclude, on that basis alone, that other forums that historically do not resolve cases at such an aggressive pace are more congested for venue transfer purposes. This is particularly true where, like here, the forum itself has not historically resolved cases so quickly.")  Notably, 25% of all patent cases filed in 2021 have been filed in WDTX,[3] and data from Docket Navigator (available at https://search.docketnavigator.com/patent/search) shows that 690 patent cases have been filed in WDTX so far in 2021, with 110 patent cases filed in NDCA.  *See* Ex. 6.  In fact, WDTX has seen an increase of 2,740 total pending cases over the last year, while NCDA has seen an increase of 1,984 cases over the same time period.[4]  And importantly, in NDCA the time-to-disposition for civil cases is 7.6 months as of June 30, 2021, while in WDTX the time-to-disposition is 7.7 months. The increasing congestion in WDTX and faster time-to-resolution in NDCA  weigh in favor of transfer.[5]  Regardless, even assuming that "the balance of this factor . . . tip[s] slightly against transfer," which it does not, "this slight imbalance alone . . . [is not] enough to tip the scales in denying transfer."  *In re Hulu, LLC*, 2021 WL 3278194, at *5.

---

[3] *See* Ryan Davis, WDTX Now Has 25% of All US Patent Cases, Law360 (July 2, 2021), https://www.law360.com/articles/1400052.
[4] *See* U.S. District Courts-Combined Civil and Criminal Federal Court Management Statistics (June 30, 2021), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf.
[5] While there may be some *de minimis* delay here due to the process of transferring the case, such "garden-variety" delay is not taken into account when weighing this factor. *In re Radmax, Ltd.*, 720 F.3d 285, 289 (5th Cir. 2013) ("[G]arden-variety delay associated with transfer is not to be taken into consideration when ruling on a § 1404(a) motion to transfer. If allowed, delay would militate against transfer in every case.").

US 169486198v14

      **b.**      **Having Localized Interests Decided At Home Weighs In Favor Of Transfer**

The local interest factor weighs in favor of transfer because Google is headquartered in NDCA, the allegedly infringing systems were developed in NDCA, and the potentially relevant witnesses reside in NDCA.  *See MV3 Partners LLC v. Roku, Inc.*, No. 6:18-CV-00308-ADA, 2019 WL 10981851, at *4 (W.D. Tex. June 25, 2019) ("[T]he Court finds that this factor favors transfer because Roku's headquarters is in Northern California, the accused infringing technologies were developed in Northern California, and a large number of Roku employees are located in Northern California.").  Because the relevant events leading to the infringement claims here took place largely in Northern California, Northern California has a legitimate interest in adjudicating the dispute.  *In re Samsung Elecs. Co., Ltd.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021) "Local interests are not a fiction" and there is "a local interest in having localized controversies decided at home."  *Id*.  That Google Maps might have a nationwide presence does not establish a particularized local in interest in WDTX.  "When the accused products or services are sold nationwide, the alleged injury does not create a substantial local interest in any particular district."  *Adaptix, Inc. v. HTC Corp. et al.*, 937 F. Supp. 2d 867, 878 (E.D. Tex. 2013); *see also In re Samsung Elecs. Co., Ltd.*, 2 F.4th at 1380 (same).  Therefore, the local interest weighs in favor of transfer to NDCA.

      **c.**      **Other Public Interest Factors Are Neutral**

The remaining public interest factors that should be considered are "familiarity of the forum with the law that will govern the case. . . [and] the avoidance of unnecessary problems of conflict of laws of the application of foreign law."  *Volkswagen I*, 371 F.3d at 203.  Both of these factors are neutral.  Both this District and NDCA are familiar with, and can apply, the relevant federal case law. This is demonstrated by case statistics from the past five years available from

Docket Navigator (available at https://search.docketnavigator.com/patent/search), which shows that both districts have had over 1,000 patent filings. *See* Ex. 6.

Finally, transferring this case to NDCA will promote efficiencies and ensure consistency in adjudications. First, Apple Inc., a related co-defendant consolidated with Google's case, has also moved to transfer to NDCA. In the Apple case, Traxcell has asserted the same two patents as it has against Google, meaning transferring both to NDCA as the appropriate and most convenient forum will avoid the consequence of competing judgments on competing schedules. Second, on August 5, 2021, Apple filed a Complaint against Traxcell in NDCA for declaratory judgment of non-infringement of U.S. Patent No. 10,820,147 (the '147 patent), which is another one Traxcell's patents related to mobile device navigation functionality and which claims priority to the same parent patents as the Patents-In-Suit in this case. As a result, there are likely to be efficiencies gained through transfer to NDCA resulting from the similarity of patents and issues involved between these cases.

## IV.    CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court transfer this action to NDCA.

Dated:  September 21, 2021                    Respectfully Submitted,

*/s/ J. Mark Mann*
J. Mark Mann
SBN: 12926150
mark@themannfirm.com
G. Blake Thompson
SBN: 24042033
blake@themannfirm.com
MANN TINDEL THOMPSON
201 E. Howard St.
Henderson, Texas 75654
Tel: 903-657-8540

14

Michael A. Berta (*pro hac vice* forthcoming)
michael.berta@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
Three Embarcadero Center
10th Floor
San Francisco, CA 94111-4024
Tel: 415-471-3277

Nicholas H. Lee (*pro hac vice* forthcoming)
nicholas.lee@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street
44th Floor
Los Angeles, CA 90017-5844
Tel: 213-243-4156

Mark Samartino (*pro hac vice forthcoming*)
mark.samartino@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
70 West Madison Street
Suite 4200
Chicago, IL 60602-4231
Tel:  312-583-2437

Kathleen M. McCarte
SBN: 24116734
kathleen.mccarte@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
700 Louisiana Street
Suite 4000
Houston, TX 77002-2755
Tel: 713-576-2418

*ATTORNEYS FOR DEFENDANT*
*GOOGLE LLC*

15

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented electronic service are being served with a copy of this document via the Court's CM/ECF system, including per Local Rule CV-5.

*/s/ Mark J. Samartino*
Mark J. Samartino


## CERTIFICATE OF CONFERENCE

I hereby certify that counsel for Defendant has conferred with counsel for Plaintiff regarding the relief requested in this motion. Specifically, on September 15, 2021, Plaintiff confirmed via electronic mail that it opposed this motion and the requested relief.

*/s/ Mark J. Samartino*
Mark J. Samartino

16

US 169486198v14